UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

NOLAN EMORY,

                              Plaintiff,

                -v-

THE CITY OF NEW YORK, New York City Police
Department Officer ("P.O.") KEITH MILLER,
P.O. MARIO MAZIER, P.O BRYAN KOERNER,
Lieutenant JAMES SOARES, and P.O. JOHN
DOES 1-3, in their individual capacities,

                          Defendants.

------------------------------------------------------------------x

**AMENDED COMPLAINT AND
DEMAND FOR A JURY TRIAL**

Index No. 19 Civ. 1103 (RJD)(LB)

      Plaintiff Nolan Emory, through his attorney Gillian Cassell-Stiga of Beldock Levine &

Hoffman, LLP, as and for his complaint, does hereby state and allege:

<u>**PRELIMINARY STATEMENT**</u>

1. This is a civil rights action brought to vindicate plaintiff's rights under the Fourth, Fifth, Sixth

   and Fourteenth Amendments of the Constitution of the United States, through the Civil Rights

   Act of 1871, *as amended*, codified as 42 U.S.C. § 1983, along with pendent claims under the

   laws of the State of New York.

2. Plaintiff Nolan Emory's rights were violated when officers of the New York City Police

   Department ("NYPD") unconstitutionally and without any legal basis seized, detained,

   arrested, and searched him. By reason of defendants' actions, including their unreasonable

   and unlawful searches and seizures, plaintiff was deprived of his constitutional rights.

3. Plaintiff also seeks an award of compensatory and punitive damages and attorneys' fees.

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343 (a)(3-4). This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States; and pursuant to the Americans with Disabilities Act of 1990, amended and codified as 42 U.S.C. § 12132, *et seq*. and the ADA Amendments Act of 2008 (ADAAA) (collectively the "ADA"), and related amendments and interpreting federal regulations including 28 C.F.R. Part 35; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq*. (the "Rehabilitation Act");.

5.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that plaintiff's claim arose in the Eastern District of New York.

6.  As authorized by New York General Municipal Law § 50-e, Mr. Emory filed a timely Notice of Claim with the New York City Comptroller on or about April 4, 2018. Thus, this Court has supplemental jurisdiction over Mr. Emory's claims under New York law because they are so related to the within federal claims that they form part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).

7.  Mr. Emory's claims have not been adjusted by the New York City Comptroller's Office.

8.  An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

## PARTIES

9.  Plaintiff Nolan Emory ("Mr. Emory") is and was at all times relevant to this action, a resident of Richmond County in the State of New York.

10. Defendant The City of New York ("City") is a municipal entity created and authorized under the laws of the State of New York.  It is authorized by law to maintain a police department

which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant City assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

11. New York City Police Department Officer ("P.O.") Keith Miller, P.O. Mario Mazier, P.O Bryan Koerner, Lieutenant James Soares, and P.O. John Does 1-3 (referred to collectively as the "Individual Defendants") are and were at all times relevant herein, officers, employees and agents of the NYPD.

12. The Individual Defendants are being sued in their individual capacities.

13. At all times relevant herein, the Individual Defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees, and officers of the NYPD, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties.  They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

14. The Individual Defendants' acts hereafter complained of were carried out intentionally, recklessly, with malice, and in gross disregard of plaintiff's rights.

15. At all relevant times, the Individual Defendants were engaged in a joint venture, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their offices to one another.

16. The true name and shield number of defendant P.O. John Does 1-3 are not currently known to the plaintiff.[1]   However, they were employees or agents of the NYPD on the date of the incident.   Accordingly, they are entitled to representation in this action by the New York City Law Department ("Law Department") upon their request, pursuant to New York State General Municipal Law § 50-k.   The Law Department, then, is hereby put on notice (a) that plaintiff intends to name said officers as defendants in an amended pleading once the true names and shield numbers of said defendants becomes known and (b) that the Law Department should immediately begin preparing their defense in this action.

## STATEMENT OF FACTS

17.  On January 26, 2018, at approximately 7:00 p.m., the Individual Defendants unlawfully entered Mr. Emory's home, without a warrant or exigent circumstances, at 176 Schmidts Lane in Richmond County in the State of New York.

18. Upon information and belief, responded to the scene of Mr. Emory's home after receiving a call from a third party concerning an individual potentially overdosing on medication.

19. The Individual Defendants knocked on Mr. Emory's door.

20. Mr. Emory answered the door.

21. The Individual Defendants stated that they had received a call that someone was overdosing.

22. Mr. Emory informed the Individual Defendants that he was the only person at the apartment and that he neither had taken nor intended to take any medication.

23. The Individual Defendants entered the apartment, looked around, confirmed that no one was overdosing, and exited the apartment.

---

[1]     By identifying said defendants as "John Doe" or "Richard Roe," plaintiff is making no representations as to the gender of said defendants.

24. After exiting, P.O. Miller placed his foot in the door jam to prevent the door from closing and stated, in sum and substance, that the officers weren't going to leave.

25. The Individual Defendants informed Mr. Emory, in sum and substance, "you're coming with us, you don't have a choice."

26. Mr. Emory explained that he did not need their assistance and repeatedly asked the officers to leave.

27.  Mr. Emory  was frightened by the aggressive actions of the officers.

28. A white-shirted officer - upon information and belief Lieutenant James Soares - entered Mr. Emory's apartment without his consent.

29. Mr. Emory again asked the Individual Defendants to leave.

30. Without warning or justification, the white shirt officer tased Mr. Emory, causing him extreme pain and fear.

31. The taser became stuck in Mr. Emory's body.

32. Mr. Emory feared for his life.

33. Although Mr. Emory posed no physical threat at any time, and without probable cause for his arrest, the Individual Defendants placed Mr. Emory in handcuffs.

34. Mr. Emory was forcibly taken to the hospital in police custody and against his will.

35. Mr. Emory was treated at the hospital, where the taser was removed from his body.

36. Defendant Miller created paperwork with false factual allegations in an attempt to cover up the unlawful use of force against Mr. Emory.

37. Mr. Emory was finally released a few hours later.

38. As a result of the unlawful entry, Mr. Emory experienced pain, suffering, and extreme mental anguish.

**FIRST CLAIM FOR RELIEF**
**DEPRIVATION OF RIGHTS**
**UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983**
(*Against the Individual Defendants*)

39. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

40. Defendants, under color of state law, subjected the plaintiff to the foregoing acts and omissions, thereby depriving plaintiff of his rights, privileges and immunities secured by the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, including, without limitation, deprivation of the following constitutional rights: (a) freedom from unlawful entry into plaintiff's home, without consent, without a warrant, and without probable cause or exigent circumstances; (b) freedom from unreasonable seizure of plaintiff's person; (c) freedom from unlawful search of his person and home; (d) freedom from arrest without probable cause; (e) freedom from false imprisonment; (f) freedom from the use of excessive force against his person; and (g) failure to intervene to prevent the complained of conduct.

41. Defendants' deprivation of plaintiff's constitutional rights resulted in the injuries and damages set forth above.

**SECOND CLAIM FOR RELIEF**
**LIABILITY OF THE CITY OF NEW YORK FOR CONSTITUTIONAL**
**VIOLATIONS – 42 U.S.C. § 1983**
(*Against defendant the City of New York*)

42. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

43. At all times material to this complaint, defendant City had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

*A policy and practice of unconstitutional entries & seizures in private homes*

44. NYPD officers routinely conduct arrests in private residences without a warrant or probable cause, and without verifying an exception to the warrant requirement.

45. NYPD officers routinely utilize "I-Cards" (information cards), containing hearsay allegations of criminal activity or safety concerns, in the place of lawfully procured warrants.

46. NYPD officers routinely utilize I-Cards to enter private residences and conduct arrests therein despite a lack of urgency or information to support an exception to the warrant requirement;

47. After conducting a warrantless entry into a home on the alleged basis of a warrant exception, NYPD officers routinely seize individuals encountered in those private residences without obtaining any corroborating information to support the alleged basis for entry and/or seizure of the resident;

48. Defendant City fails to properly train NYPD officers as to the permissible bounds of the Fourth Amendment, the warrant requirement for entry into a private residence, and the narrow and extremely limited exceptions to the warrant requirement;

49. NYPD officers routinely receive prank calls with false or hearsay allegations from disgruntled individuals seeking to pursue personal vendettas, and defendant City is on notice that its officers will frequently be presented with such circumstances.

50. Defendant City has actual knowledge that a lack of proper investigation of false or hearsay allegations, and  the failure to train on the bounds of any exception to the warrant requirement, can and does result in constitutional violations. [2]

---

[2] *Crossing the Threshold: An Evaluation of Civilian Complaints of Improper Entries and Searches by the NYPD from January 2010 to October 2015*, CCRB (2015), available at http://www.nyc.gov/html/ccrb/downloads/pdf/Crossing-the-Threshold-2010-2015.pdf.

51. In a 2015 Civilian Complaint Review Board ("CCRB") Report analyzing improper entries and searches by the NYPD from January 2010 to October 2015, the CCRB identified a trend in CCRB complaints, finding that, in a number of cases, the NYPD officers were improperly using I-Cards to gain access to individual's homes: "Investigation cards (commonly known as I-cards) are present in numerous substantiated cases, suggesting that they are being improperly used by investigatory commands to gain entry into homes to search and apprehend the subject of the investigation card."[3]

52. In the Report, the CCRB analyzed 1,759 complaints corresponding to 2,465 allegations of unlawful entries and searches of a premises between January 2010 to October 2015.

53. The CCRB identified 28 out of 174 (16%) cases of substantiated CCRB complaints in which the NYPD used I-Cards to unlawfully and unconstitutionally gain access into a home.[4]

54. The CCRB recommended the following:

    a. The NYPD Patrol Guide, Police Student's Guide, and other training material should explicitly state, and officers should be retrained, that investigation cards are not warrants. Further, investigation cards carry with them no authority to enter homes; and

    b. The NYPD should clarify the situations where it is permissible for officers to create an investigation card for an individual instead of obtaining an arrest warrant, with an emphasis on the need for warrants if officers want to apprehend an individual inside a private residence.

55. Despite actual notice of the likelihood that its officers will be presented with false or hearsay allegations concerning a safety or wellness concern, and knowledge that this will result in

---

[3] *Id.*
[4] *Id.* at 54.

constitutional violations, defendant City fails to implement appropriate procedures, guidelines, and training concerning the constitutionally permissible bounds of any exception to the warrant requirement and the need for investigation and corroboration of such allegations prior to warrantless seizure.

56. Defendant City does not adequately train NYPD officers as to:

a. The necessary steps that must be taken to properly confirm probable cause to support entry, obtain a warrant, or lawfully arrest;

b. The necessary steps that must be taken to properly confirm an ongoing, urgent safety or wellness concern;

c. What information constitutes hearsay or attenuated allegations insufficient to support entry into a private residence;

d. The indicia of emergency and/or exigent circumstances supporting a departure from the warrant requirement;

e. The manner in which to conduct an investigation to lawfully support warrantless entry into a private residence prior to such entry, or

f. The manner in which to conduct further investigation and action immediately upon warrantless entrance into a private home, including the additional information needed to support remaining in a private residence of seizure of a subject in a private residence without a warrant;

g. When and how force may permissibly be utilized after conducting a warrantless entry to for the limited purpose of investigating an emergency or conduct a wellness check;

57. Despite a pervasive and well-documented practice of entering private residences and arresting residents without a warrant or probable cause, often employing excessive force to effectuate

such unlawful arrests, defendant City fails to train, supervise, and discipline its officers in response to those documented violations of the warrant requirement;

58. Defendant City deliberately disregards a pervasive custom and practice amounting to institutional policy giving rise to the constitutional violations alleged herein, as is further supported by a Civilian Complaint Review board report titled "Crossing the Threshold: An Evaluation of Civilian Complaints of Improper Entries and Searches by the NYPD from January 2010 to October 2015."[5]

59. Despite the well documented nature of the unconstitutional policies and practices, defendant City has allowed the same to continue, directly causing the violation of Plaintiff's rights, in addition to many others.

60. Here, the Individual Defendants unlawfully entered Plaintiff's apartment based on hearsay allegations of a wellness or safety concern, and yet violently tased and seized Plaintiff, the subject individual - conduct falling within and arising directly from defendant City's unconstitutional policies and practices.

61. Here, the Individual Defendants failed to establish the existence of corroborating facts or information to support re-entering or remaining in Plaintiff's home, or seizing plaintiff's person by use of force - conduct falling within and arising directly from defendant City's unconstitutional policies and practices.

62. Defendant City's unconstitutional policies and practices were a direct and proximate cause of the violation of Plaintiff's constitutionally protected rights as well as the physical and emotional injury that resulted.

---

[5] *Id.*

*Use of excessive and unjustifiable force against perceived EDPs or persons in mental*

*crisis/emotional distress*

63. Defendant City of New York has unconstitutional policies and practices that criminalize mental health conditionals, crisis, distress, and justifiable anger, and allow for the unjustified use of force against individuals who have committed no crime.

64. The above described violations of Plaintiff's rights were a direct result of the Individual Defendants' and the City's deliberate indifference to individuals deemed emotionally disturbed persons (hereinafter, "EDP" or "EDPs").

65. NYPD officers routinely seize, by use of excessive force, individuals for whom officers are on notice that mental crisis, emotional distress, and/or mental disability is at issue, or where officers subjectively believe the individual to be an "Emotionally Disturbed Person" (EDP) as that term is utilized by the NYPD;

66. It is not a crime to be emotionally overwrought, in mental crisis, or upset, nor does such condition provide probable cause for a seizure, arrest or the use of force;

67. NYPD officers routinely utilize excessive force against individuals in emotional distress and/or mental crisis without requesting or waiting for assistance and/or evaluation by a qualified mental health or emergency care personnel;

68. NYPD officers routinely utilize excessive force against individuals with observable mental health conditions and/or disabilities without requesting or waiting for assistance and/or evaluation by a qualified mental health or emergency care personnel;

69. Yet, at all times material to this complaint, defendant City failed to properly train, screen, supervise, or discipline its employees and police officers, including the Individual Defendants and failed to inform the Individual Defendant's supervisors of their need to train, screen,

supervise or discipline the Individual Defendants.

70. Defendant City has actual notice of the extremely high likelihood that its officers will respond to calls or otherwise engage with individuals in mental distress, crisis or with a mental health condition that qualifies as disability.

71. The "NYPD handles approximately 400 mental crisis calls a day."[6]

72. Defendant City has actual knowledge that a lack of proper training on the procedure for responding to individuals in mental distress, crisis or with a mental health condition will result in constitutional violations.

73. The NYPD has acknowledged the failures of its *de facto* EDP policy by implementing a Crisis Intervention Team ("CIT") beginning in the summer of 2015.

74. The NYPD acknowledged a need for specialized training to effectively manage calls involving people in mental crisis and/or EDPs.

75. As early as 2015, the NYPD has "recognized that officers would benefit from having additional, specialized training to better equip them to manage" responding to calls involving "people in mental crisis."[7]

76. The NYPD "first began providing officers with CIT training in June 2015." [8]

---

[6]    Press Release: *DOI's Office of the Inspector General for the New York City Police Department Releases a Report and* Analyses on the NYPD's Crisis Intervention Team Initiative, The City of New York Department of Investigation, Release #04-2017, January 19, 2017, available at nyc.gov/oignypd.

[7]    *Putting Training Into Practice: A Review of NYPD'S Approach to Handling Interactions with People in Mental Crisis*, Office of the Inspector General for the NYPD, January 2017, p. 1.

[8]    Press Release: *DOI's Office of the Inspector General for the New York City Police Department Releases a Report and Analyses on the NYPD's Crisis Intervention Team Initiative*, The City of New York Department of Investigation, Release #04-2017, January 19, 2017, available at nyc.gov/oignypd.

77. In January of 2017, the Office of the Inspector General for the New York City Police Department (OIG) published the results of an 18-month OIG investigation into the NYPD handling of individuals with mental health issues by means of it's the CIT program and found the NYPD "has not taken steps to implement a dispatch system that ensures CIT-trained officers are consistently assigned to calls involving people in mental distress";[9]

78. In January of 2017, the OIG also found the "NYPD has not updated its policies to align with its own CIT training" and had not "created a dedicated staff to coordinate CIT efforts" nor "implemented and operationalized a full-scale CIT program that dispatches CIT-trained officers to mental health calls." [10]

79. In April 2019, the OIG stated "Like last year, NYPD reiterates its inability to reconfigure the Intergraph Computer Aided Dispatch (ICAD) system to automatically designate CIT-trained officers to respond to calls regarding individuals in crisis."[11]

80. Upon information and belief, despite the failure to implement a system to automatically deploy trained personnel, the NYPD failed to implement a substitute system to deploy officers with adequate training in response to calls involving mental health crisis or perceived EDPs.

81. Yet, the NYPD fails to train those officers most likely to be the initial point of contact with civilians as how to differentiate symptoms of  mental crisis or mental health condition from

---

[9]      Press Release: *DOI's Office of the Inspector General for the New York City Police Department Releases a Report and Analyses on the NYPD's Crisis Intervention Team Initiative*, The City of New York Department of Investigation, Release #04-2017, January 19, 2017, available at nyc.gov/oignypd.

[10]      *Putting Training Into Practice: A Review of NYPD'S Approach to Handling Interactions with People in Mental Crisis*, Office of the Inspector General for the NYPD, January 2017.

[11]      *Fifth Annual Report*, Office of the Inspector General for the NYPD, April 2019, available at   <https://www1.nyc.gov/assets/doi/press-releases/2019/April/08OIGNYPDAnnualReport04-01-19.Release.pdf>, at p. 43.

initial of criminal activity.

82. It is also a custom, policy, and/or practice of defendant City to conduct inadequate screening in the hiring of police officers for their propensity for violence, and to retain those officers despite repeated excessive force incidents and violations of constitutional rights;

83. The NYPD fails to discipline officers who unlawfully seize individuals on the basis of a perceived mental health crisis or distress.

84. The NYPD fails to discipline officers who utilize excessive force against individuals perceived to be in mental health crisis or distress.

85. Despite repeated allegations concerning excessive force utilized by a subject officer, defendant City retains and does not impose mandatory supplemental force training;

86. Defendant City developed and maintained a culture of indifference with respect to emotionally disturbed individuals, and have created a de facto NYPD policy of brute and excessive force which, in many instances, have led to death.

87. The *de facto* policy and the culture of indifference have existed for years, including, but not limited to, the following examples:

   a. 1984: *Bumpers v. New York City Transit Authority et al.*: When Housing Authority Officials asked for NYPD assistance with the eviction of a 66-year-old African American women they knew was mentally disturbed, officers broke in, ultimately shooting and killing Ms. Bumpers.

   b. 2001: *Kerman v. City of New York et al.*: NYPD officers forcibly entered Mr. Kerman's apartment without a warrant and, knowing he was mentally disabled, slammed the door against Mr. Kerman's forehead, then forcibly restrained him.

   c. 2004: *Estate of Busch v. City of New York et al.*: Six NYPD officers responded to a call regarding a mentally disturbed 29-year-old man with a hammer, and shot him twelve times, killing him instantly.

   d. 2007: *Khiel Choppin*: The mother of a mentally disabled man called 911 seeking assistance to help transport her son to a psychiatric hospital. Mr. Choppin was shot and killed by NYPD officers after he attempted to escape by climbing out of his window

14

and holding a hairbrush under his shirt. He was unarmed.

e. 2008: *Negron v. City of New York et al.*: When officers responded to a mother's request for help with her son Iman Morales, who suffered from schizoaffective disorder and had barricaded himself into his apartment, the officers chose to use a Taser when Morales was standing on a ledge, causing him to fall off the ledge to his death.

f. 2012: *Francis v. City of New York et al.*: On March 15, 2012, Shereese Francis, an unarmed 29 year-old woman, was killed in her own home by NYPD officers summoned by her family to transport her to the hospital for psychiatric evaluation and care. The officers needlessly antagonized Ms. Francis, chased her, and tackled her onto a bed, pressed their weight on her until she suffered cardiac arrest, and then prevented her from receiving appropriate, timely medical care.

g. 2012: *Bah v. City of New York*: Mohamed Bah's mother called for an ambulance for her son after he began acting strangely, informing the dispatcher that he had mental health issues. Rather than an ambulance, police officers arrived and, despite his refusal and his mother's objections, confronted Mr. Bah. The officers refused his mother's request to let her try and calm him down. NYPD officers with police shields, Tasers, and other weapons surrounded the apartment and forced open Mr. Bah's front door. The officers used a Taser against Mr. Bah, fired bean bags at him, and ultimately shot and killed him.

h. 2016: *Deborah Danner*: Ms. Danner was a 66-year-old African-American woman with a history of schizophrenia who was killed by the NYPD on October 18, 2016. The NYPD responded to a call that a woman had been acting erratically in an apartment building. When they arrived. Ms. Danner was holding kitchen scissors. The officer then alleges that she picked up a wooden bat. Sergeant Hugh Barry shot Ms. Danner twice, killing her. In response, NYPD Police Commissioner James P. O'Neill stated that "we've established procedures and protocols for handling emotionally disturbed people. That's to keep everybody safe, that's to keep the cops safe, the community safe and the person that we're dealing with safe." He added, "it looks like some of those procedures weren't followed."[12]

i. 2016: *Conrad v. City of New York*: NYPD officers were summoned to a Food Emporium after a customer, Garry Conrad, had been reported acting erratically. After Mr. Conrad was escorted out of the store, officers approached Mr. Conrad and, rather than de-escalating the situation, caused further escalation. The officers shot Mr. Conrad seven times after he allegedly brandished a knife.

j. September 6, 2017: *Miguel Richards*: NYPD officers responded to a request from a

---

[12]     Mark Berman*, 'We failed,' New York police commissioner says of sergeant fatally shooting 'emotionally disturbed' woman*, Wash. Post, Oct. 19, 2016, *available at* https://www.washingtonpost.com/news/post-nation/wp/2016/10/19/new-york-police-sergeant-fatally-shoots-emotionally-disturbed-woman-in-the-bronx/?utm_term=.8f8bd26bfda9.

Bronx landlord to check on a tenant. The officers found Mr. Richards in his room standing in a corner with a knife—and what was later discovered to be a toy gun—in his hand. For approximately 15 minutes, officers screamed at him, instructing him to put his knife down. Mr. Richards did not move or make a sound. During the exchange, one officer suggested that the officers close the door and allow the Emergency Service Unit officers, who were downstairs, to handle the situation. Instead, the officers escalated the situation by bursting in and firing 16 shots at Mr. Richards, killing him instantly.

88. Defendant City's deliberate indifference to a policy, practice, and custom causing the aforementioned constitutional violations, was a direct and proximate cause of the harm caused to Plaintiff.

89. The Individual Defendants failed to establish the existence of corroborating facts or information to support re-entering or remaining in Plaintiff's home, or seizing Plaintiff's person by use of force - conduct falling within and arising directly from defendant City's unconstitutional policies and practices.

90. Here, although the Individual Defendants perceived Plaintiff to be in mental health crisis or an "EDP" untrained officers were deployed to respond to the scene, and initiated and pursued interaction with Plaintiff without a proper basis of knowledge and training.

91. For example, Section 216-05 of the NYPD Patrol Guide explicitly states: "Do not attempt to take [emotionally disturbed persons] into custody without the specific direction of a supervisor" and "attempt to isolate and contain [the person] while maintaining a zone of safety until arrival of a patrol supervisor and Emergency Service Unit personnel."

92. Despite the foregoing, the Individual Defendants failed to follow the Patrol Guide and other generally accepted standards. Instead, they forced a physical confrontation, used excessive force, and were otherwise wantonly reckless in the manner in which they treated Plaintiff and utilized excessive and unjustifiable force against his person.

93. As a direct result of Defendant City's unconstitutional policy, practice, and custom, and

although the Individual Defendants perceived Plaintiff to be in mental health crisis or an "EDP", the Individual Defendants violently seized Plaintiff in his home without lawful basis.

94. As a direct result of Defendant City's unconstitutional policy, practice, and custom, and although the Individual Defendants perceived Plaintiff to be in mental health crisis or an "EDP", the Individual Defendants utilized a taser against Plaintiff in a manner constituting excessive force.

95. As a result of Defendant City's unconstitutional policy, practice, and custom, the Individual Defendants fabricated information, created false paperwork, and failed to otherwise truthfully document their interaction with Plaintiff, in order to cover up their own mis-handling of the interaction and their unjustifiable use of force.

96. The aforenoted policies, practices, customs, and usages, were a direct and proximate cause of the unconstitutional conduct alleged herein, causing physical injury and emotion harm to Plaintiff in violation of his constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its First, Fourth, Sixth and Fourteenth Amendments.

**THIRD CLAIM FOR RELIEF**
**TRESPASS**
**UNDER THE LAWS OF THE STATE OF NEW YORK**
(*Against all defendants*)

97. Plaintiffs incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

98. The Individual Defendants entered the apartment without any occupants' consent, without a warrant and without exigent circumstances, and unlawfully remained therein, thereby interfering with the plaintiffs' right of possession.

99. The conduct of the Individual Defendants alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as NYPD

officers, and/or while they were acting as agents and employees of defendant CITY, clothed with and/or invoking state power and/or authority, and, as a result, defendant CITY is liable to the plaintiffs pursuant to the state common law doctrine of respondeat superior.

100.    The defendants' deprivations of plaintiffs' rights resulted in the injuries and damages set forth above.

**FOURTH CLAIM FOR RELIEF**
**TRESPASS TO CHATTELS**
**UNDER THE LAWS OF THE STATE OF NEW YORK**
(*Against all defendants*)

101.    Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

102.    The Individual Defendants entered the apartment without any occupants' consent, without a warrant and without exigent circumstances, and unlawfully remained therein. The Individual Defendants thereafter physically searched through plaintiffs' personal belongings, including the contents of small drawers and containers, thereby interfering with the plaintiffs' right of possession.

103.    The conduct of the Individual Defendants alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as agents and employees of defendant City, clothed with and/or invoking state power and/or authority, and, as a result, defendant City is liable to the plaintiffs pursuant to the state common law doctrine of respondeat superior.

104.    The defendants' deprivations of plaintiffs' rights resulted in the injuries and damages set forth above.

**FIFTH CLAIM FOR RELIEF**
**FALSE ARREST AND FALSE IMPRISONMENT**
**UNDER THE LAWS OF THE STATE OF NEW YORK**
(*Against all defendants*)

105.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as

if fully set forth herein.

106.    By the actions described above, the Individual Defendants caused to be falsely arrested or

falsely arrested plaintiff, without reasonable or probable cause, illegally and without a warrant,

and without any right or authority to do so, maliciously prosecuted plaintiff, and abused

process.

107.    The acts and conduct of the Individual Defendants were the direct and proximate cause of

injury and damage to plaintiff and violated his statutory and common law rights as guaranteed

by the laws and Constitution of the State of New York.

108.    The conduct of the Individual Defendants alleged herein occurred while they were on duty

and in uniform, and/or in and during the course and scope of their duties and functions as

NYPD officers, and/or while they were acting as agents and employees of defendant City,

clothed with and/or invoking state power and/or authority, and, as a result, defendant City is

liable to plaintiffs pursuant to the state common law doctrine of respondeat superior.

109.    As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and

serious bodily injury, pain and suffering, psychological and emotional injury, costs and

expenses, and was otherwise damaged and injured.

**SIXTH CLAIM FOR RELIEF**
**ASSAULT AND BATTERY**
**UNDER THE LAWS OF THE STATE OF NEW YORK**
(*Against all defendants*)

110.    Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as

if fully set forth herein.

111.   By the actions described above, the Individual Defendants did inflict assault and battery upon plaintiff. The acts and conduct of Individual Defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

112.   The conduct of the Individual Defendants alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as agents and employees of defendant City, clothed with and/or invoking state power and/or authority, and, as a result, defendant City is liable to plaintiff pursuant to the state common law doctrine of respondeat superior.

113.   The defendants' deprivations of plaintiff's rights resulted in the injuries and damages set forth above.

## SEVENTH CLAIM FOR RELIEF
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## <u>UNDER THE LAWS OF THE STATE OF NEW YORK</u>
### (*Against all defendants*)

114.   Plaintiff incorporates by reference the allegation set forth in all preceding paragraphs as if fully set forth herein.

115.   By the actions described above, defendants engaged in extreme and outrageous conduct, which negligently caused severe emotion distress to Plaintiff.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

116.   As a result of the foregoing, Plaintiff was deprived of his liberty and property, suffered emotional distress, humiliation, and was otherwise damaged and injured.

**EIGHTH CLAIM FOR RELIEF**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**UNDER THE LAWS OF THE STATE OF NEW YORK**
(***Against all defendants***)

117.    Plaintiff incorporates by reference the allegation set forth in all preceding paragraphs as if fully set forth herein.

118.    By the actions described above, defendants engaged in extreme and outrageous conduct, which intentionally caused severe emotion distress to Plaintiff.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

119.    As a result of the foregoing, Plaintiff was deprived of his liberty and property, suffered emotional distress, humiliation, and was otherwise damaged and injured.

**NINETH CLAIM FOR RELIEF**
**NEGLIGENCE**
**UNDER THE LAWS OF THE STATE OF NEW YORK**
(***Against all defendants***)

120.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

121.    Defendants owed a duty of care to Plaintiff to prevent the physical, mental, and economic damages sustained by Plaintiff. Under the same or similar circumstances, a reasonable, prudent, and careful person would have anticipated that an injury to Plaintiff or to those in a like situation would probably result from this conduct.

122.    Defendant City negligently hired, screened, retained, supervised, and trained the individuals defendants.

123.    Defendants jointly and severally, negligently caused injury, pain and suffering, emotional

distress, and damage to Plaintiff.

124.    The acts and conduct of defendants were the direct and proximate cause of injury and

damage to Plaintiff and violated his statutory and common law rights as guaranteed by the laws

and Constitution of the State of New York.

125.    The acts and conduct of the defendants were the direct and proximate cause of injury and

damage to Plaintiff and violated his statutory and common law rights as guaranteed by the laws

and Constitution of the State of New York.

**TENTH CAUSE OF ACTION**
**<u>VIOLATIONS OF THE NEW YORK STATE CONSTITUTION</u>**
(***Against all defendants***)

126.    Plaintiff repeats and re-alleges paragraphs 1 through 104 as if fully set forth herein.

127.    Defendants subjected Plaintiff to the foregoing acts and omissions without due process of

law, thereby depriving Plaintiff of rights, privileges, and immunities secured by Article 1, §§

8, 9, 11, and 12 of the New York State Constitution, including, without limitation, the

following deprivations of his rights, privileges, and immunities:

    i.    Plaintiff was deprived of his right to equal protection under the law and was subjected

to discrimination based on his race, in violation of New York State Constitution Article

1, § 11; and

128.    Plaintiff was deprived of his right to be free from unreasonable searches and seizures, in

violation of New York State Constitution Article 1, § 12.

129.    As a result of the foregoing, Plaintiff was deprived of his liberty and property, suffered

physical injury and emotional distress, humiliation, and was otherwise damaged and injured.

### ELEVENTH CLAIM FOR RELIEF
### BIAS-BASED PROFILING
### <u>UNDER THE LAWS OF THE CITY OF NEW YORK</u>
#### (*Against all defendants*)

130.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

131.    In seizing, assaulting, searching, arresting, and initiating law enforcement action against Plaintiff based on his actual and/or perceived race or disability rather than Plaintiff's behavior or other information linking him to suspected unlawful activity, Defendants engaged in bias-based profiling in violation of Section 14-151(c)(i) and (ii) of the Administrative Code of the City of New York.

132.    Accordingly, plaintiff is entitled to injunctive and declaratory relief, along with reasonable attorney's fees and costs.

### TWELFTH CLAIM FOR RELIEF
### UNLAWFUL DISCRIMINATION
### <u>UNDER THE LAWS OF THE CITY OF NEW YORK</u>
#### (*Against all defendants*)

133.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

134.    By the actions described above, namely in seizing, assaulting and searching Plaintiff, without reasonable suspicion or probable cause that he had committed a crime, and based solely on his perceived race and/or disability as those terms are defined in Title 8 of the New York City Administrative Code § 8-101 et seq., the Individual Defendants discriminated against plaintiff and denied him equal protection under the law.

135.    The acts and conduct of the Individual Defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

136.    The conduct of the Individual Defendants alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as agents and employees of defendant City, clothed with and/or invoking state power and/or authority, and, as a result, defendant City is liable to plaintiffs pursuant to the state common law doctrine of respondeat superior.

137.    As a result of the foregoing, plaintiff was deprived of his liberty, suffered physical injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

**THIRTEENTH CLAIM FOR RELIEF**
**RESPONDEAT SUPERIOR LIABILITY**
**UNDER THE LAWS OF THE STATE OF NEW YORK**
(*Against the City of New York*)

138.    Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

139.    The conduct of the Individual Defendants as alleged herein, occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as police officers and/or while they were acting as agents and employees of the City of New York and, as a result, the City of New York, is liable to the plaintiff pursuant to state common law doctrine of respondeat superior.

140.    As a result of the foregoing, Plaintiff was deprived of his liberty and property, suffered emotional distress, humiliation, and was otherwise damaged and injured.

**FOURTEENTH CAUSE OF ACTION**
**PURSUANT TO 42 U.S.C. § 12131 *et al.* and 29 U.S.C. § 794**
**AMERICANS WITH DISABILITIES ACT AND REHABILITATION ACT**
(*Against All Defendants*)

141.    Plaintiff repeats and re-alleges each of the above paragraphs with the same force as if set forth herein.

24

142.    By depriving Plaintiff of a reasonable accommodation of his pierced mental health disability, and employing excessive and unnecessary force against plaintiff in response to a perceived mental health disability, defendants deprived Plaintiff of rights guaranteed by the ADA and the Rehabilitation Act and federal regulation applicable to the treatment of individuals with disabilities.

143.    Defendants denied Plaintiff of access to qualified medical staff and first responders, by without lawful basis employing force against Plaintiff prior to evaluation by qualified and trained personnel.

144.    As a result of defendants' acts and omissions, Plaintiff suffered injury and damages including, inter alia, physical and mental pain, suffering, humiliation and mental anguish.

## **JURY DEMAND**

145.    Plaintiff demands a trial by jury in this action on each and every one of his damage claims.

WHEREFORE, plaintiff demands judgment against the defendants individually and jointly and prays for relief as follows:

a.    That he be compensated for violation of his constitutional rights, pain, suffering, mental anguish and humiliation; and

b.    That he be awarded punitive damages against the Individual Defendants; and

c.    That he be compensated for attorneys' fees and the costs and disbursements of this action; and

d.    For such other further and different relief as to the Court may seem just and proper.

[Signature page follows]

Dated:    New York, New York
          April 24, 2019

                                   Respectfully submitted,

                        By:    _____
                                   Gillian Cassell-Stiga
                                   Beldock Levine & Hoffman LLP
                                   *Attorneys for the Plaintiff*
                                   99 Park Avenue, PH/26th Floor
                                   New York, New York 10016
                                   t: 212-277-5824
                                   e: gcassell@blhny.com